# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

DINO STRANJAC                                          CIVIL ACTION

VERSUS                                                    No. 10-829

RUSTY JENKINS, ET AL.                                     SECTION I

## ORDER AND REASONS

Before the Court is a motion[1] for summary judgment, as well as a motion[2] *in limine* to exclude expert testimony, filed by defendants, Rusty Jenkins and the town of Walker, Louisiana. Plaintiff, Dino Stranjac, has filed oppositions with respect to both motions.[3] For the following reasons, the motions are **GRANTED IN PART** and **DENIED IN PART**.

### *BACKGROUND*

Plaintiff, Dino Stranjac ("Stranjac"), alleges that on December 21, 2009, he was savagely attacked by a K-9 police dog during a traffic stop for speeding.[4] According to the complaint, Stranjac and his girlfriend were driving westbound on Interstate 12 in Livingston Parish around midnight when a police car signaled Stranjac to pull over for speeding.[5] Stranjac claims that he did not immediately pull over because he was concerned about the safety of stopping on the unlit

---

[1] R. Doc. No. 44.

[2] R. Doc. No. 45.

[3] R. Doc. Nos. 48, 49.

[4] R. Doc. No. 1.

[5] *Id.* at ¶¶ 4-5.

shoulder.[6]  Stranjac instead drove to the Walker exit, where he pulled into a Waffle House parking lot.[7]

Stanjac claims that several police officers approached and ordered him to walk toward them with his hands in the air.[8]  He claims that he complied with their orders, but Officer Rusty Jenkins ("Officer Jenkins") of the Walker Police Department suddenly released his K-9 police dog, Levi, which proceeded to attack him.[9]  He claims that Officer Jenkins, in order to conceal his improper use of force, then falsely arrested him for resisting an officer and driving while intoxicated ("DWI").[10]

On December 10, 2010, Stranjac filed this lawsuit asserting claims against Officer Jenkins pursuant to 42 U.S.C. § 1983, *et seq.* for violations of the U.S. Constitution.  Stranjac also seeks damages against Officer Jenkins and the town of Walker under state law pursuant to Louisiana Civil Code articles 2315 and 2320.[11]  Stranjac alleges that Officer Jenkins' actions were reckless and callously indifferent to his federally protected rights, and that they resulted in damages including medical bills, loss of income, pain and suffering, mental anguish, anxiety and fear, and permanent scarring and disfigurement.[12]  Stranjac further claims that as the employer of

---

[6] *Id.* at ¶ 5.

[7] *Id.*

[8] *Id.* at ¶¶ 6-7.

[9] *Id.* at ¶¶ 7, 9.

[10] *Id.* at ¶ 11.

[11] R. Doc. No. 1.

[12] *Id.* at ¶¶ 12-13.

Officer Jenkins, the town of Walker is vicariously liable for Jenkins' reckless acts against him under Louisiana law.[13]

Officer Jenkins and the town of Walker dispute Stranjac's account of his arrest.[14] They contend that Officer Jenkins acted appropriately under the circumstances and that he did not violate Stranjac's constitutional rights.[15]   According to defendants, the facts giving rise to Stranjac's arrest came to pass when the Livingston Parish police department received a panicked call from a motorist reporting Stranjac's vehicle being driven at excessive speeds, endangering other drivers, and running cars off the road.[16]   Officer Steve Bernard ("Officer Bernard") responded to the call and he eventually reached Stranjac's vehicle.[17] The video camera mounted on Officer Bernard's dashboard captured the pursuit, and defendants contend that it confirms that Stranjac did not immediately stop his vehicle, but instead led officers to the Waffle House parking lot.[18]

Officer Jenkins contends that he joined the pursuit and took the lead in accordance with police protocol.  He claims that he proceeded to conduct a felony traffic stop believing that Stranjac had committed the criminal offense of aggravated flight from an officer.[19]   Officer

---

[13] *Id.* at ¶ 16.

[14] *See* R. Doc. No. 44-1.

[15] See id.

[16] *Id.*; R. Doc. No. 52.

R. Doc. No. 52.

[17] *See id.*; R. Doc. No. 44-11.

[18] R. Doc. Nos. 44-1, 44-11.

[19] R. Doc. Nos. 44-1, 44-4.

Jenkins attests that after Stranjac finally stopped his truck in the Waffle House parking lot, the arrest unfolded as follows:

> [Officer Jenkins] issued a verbal command to plaintiff to exit his vehicle, which he did, leaving his door open. [Officer Jenkins] observed that plaintiff was wearing a below-the-waist, black leather coat, and observed that there was an unidentified passenger remaining in his vehicle. [Officer Jenkins] commanded plaintiff to show his hands, which he did.
>
> [Officer Jenkins] then commanded plaintiff to get on the ground, which he refused to do. [Officer Jenkins] gave plaintiff the command to get on the ground 2 additional times, and plaintiff refused to comply with that lawful command. After the third time the command was given, plaintiff then began to turn and took a step back toward the open door of his vehicle.
>
> At that point, [Officer Jenkins] called his police dog Levi to his side and gave plaintiff his 4th command to get on the ground. Following this 4th command, [Officer Jenkins] specifically warned plaintiff that his failure to comply with the lawful command to get on the ground would result in the dog being released on him.
>
> Plaintiff still refused to comply, and took another step toward the open door of his vehicle, further turning his body toward his open driver's side door. [Officer Jenkins] gave plaintiff his 5th and final command to get on the ground, again warning plaintiff that the failure to do so would result in the dog being released. Plaintiff was, at that point, standing inside the doorway of this vehicle.
>
> Fearing for the safety of the numerous persons at the Waffle House, as well as the officers on the scene, [Officer Jenkins] was forced to give the command for Levi to secure the plaintiff. Plaintiff continued to resist arrest, fighting with Levi and struggling to remain on his feet. During this time, plaintiff lifted the patrol dog Levi with his arm and calmly asked [Officer Jenkins] to call off his K-9. As soon as Levi was successful in putting plaintiff on the ground, the dog was immediately called off, and [Officer Jenkins] and PFC Bernard handcuffed and secured plaintiff.[20]

_____

[20] R. Doc. No. 44-4. Officer Bernard signed an affidavit that mirrors Officer Jenkins' account of the arrest. R. Doc. No. 44-5.

Faustin Wascom, an independent witness, signed a witness statement that generally corroborated Officer Jenkins' account of the arrest.[21]   Mr. Wascom described what he saw as follows:

> I saw a lot of police cars pulling into Waffle House.  Their sirens and lights were on.  When I went outside I saw a man standing outside a pickup.  Officers repeatedly warned the man he had to get down on the ground.  After almost a minute passed of warnings, the man did not comply.  The K-9 was then released and brought the man down.  The officers immediately removed the K-9 and advised the man of his rights then cuffed him.[22]

Unfortunately, the video camera mounted on Officer Jenkins' unit was not functioning at the time of the arrest, and it did not record the events on the driver's side of Stranjac's truck. However, the video camera in Officer Bernard's unit was able to capture the events that took place on the passenger side of the vehicle.[23]  A review of the video shows Officer Bernard's unit pulling up beside Stranjac's truck in the Waffle House parking lot.[24]  After the unit stops, an officer can be seen circling across the back of Stranjac's truck, gun drawn, to cover and secure the passenger side of the vehicle.[25]  Less than ten seconds later, Levi can be seen running across the passenger side of the truck to the front of the vehicle.[26]

---

[21] R. Doc. No. 44-11.

[22] Id.

[23] Id.

[24] *Id.* at 2:55-3:08.

[25] *Id.* at 3:17.

[26] *Id.* at 3:26.

The majority of these facts are not genuinely in dispute.  However, Stranjac contends that he does not remember being told to get on the ground after he stepped out of his truck.[27]  He attests that he stood with his hands above his head while three police officers pointed their weapons at him.[28]  He claims that he never reached into his vehicle, never made any threatening moves, and never attempted to flee the area.[29]  In his deposition, Stranjac explained,

> They asked me to get out of the vehicle, which I did.  Step away from the vehicle.  I did so.  Put my hands in the air, which I did.  And from what I remember, next thing, I'm fighting with a canine officer.  He's biting me, jumping on me . . .
>
> Q.  How long do you think transpired between the time that you stepped away from the vehicle with your hands up and the time that the dog made contact with your body?
>
> A.  I would say matter of seconds, as well.
>
> Q.  Where was your focus during those seconds?  What were you looking at?
>
> A.  Guns and my life flashing before my eyes.
>
> Q.  Were you afraid of the guns?
>
> A.  Yes, ma'am.
>
> Q.  Were you afraid of the dog?
>
> A.  Of course.
>
> Q.  Do you recall seeing the dog coming to the side of one of the officers?
>
> A.  All I remember, seeing jaws in my face.  That's when I figured out it's a dog.

---

[27] R. Doc. No. 49-5.

[28] *Id.*

[29] *Id.*

Q. You at no point prior to him actually coming towards you, you did not see the dog standing by an officer?

A. No, ma'am.[30]

On December 6, 2011, retired U.S. Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent and Criminal Justice Associate Professor, W. Lloyd Grafton ("Grafton"), released an expert report prepared in support of Stranjac's excessive force claims in which he concludes, "I am of the opinion that Officer Rusty Jenkins used excessive force in arresting Mr. Dino Stranjac."[31] Grafton based his opinion on the arrest report, depositions of the arresting officers, the policies and procedures of the Walker police department pertaining to K-9 use, and the arrest and booking detail page of Stranjac's arrest.[32] Grafton reached his conclusion by applying what he understood as the undisputed facts to the tenets of Pressure Point Control Tactics ("PPCT") and the Walker police policy manual regarding the use of K-9 units.[33] Grafton concluded that Officer Jenkins should have approached Stranjac using soft empty hand techniques to place him in handcuffs while the other officers covered him.[34] He further opined that utilizing an intermediate weapon such as a police dog was unnecessary while Stranjac stood beside his car with his hands in the air.[35]

Defendants contend that Grafton's opinion should be excluded on the grounds that he is not qualified to testify as an expert in the use of canines as law enforcement tools, his opinion is

---

[30] R. Doc. No. 44-8, pp. 42-45.

[31] R. Doc. No. 46-2, p. 6.

[32] *Id.* at 1.

[33] *Id.* at 3-6.

[34] *Id.* at 4-5.

[35] *Id.* at 5-6.

not based on recognized principles of professional conduct, and his opinion is based on erroneous factual assumptions and legal conclusions.[36] Defendants also contend that even when taking the facts in a light most favorable to the plaintiff, they are entitled to summary judgment and that all of Stranjac's claims should be dismissed with prejudice on the grounds that: (1) no reasonable jury could find that Jenkins lacked probable cause to arrest plaintiff for resisting arrest and DWI; (2) Jenkins' actions do not amount to a constitutional violation; (3) Jenkins is entitled to qualified immunity for plaintiff's claim for excessive force under 42 U.S.C § 1983; (4) Jenkins is entitled to discretionary immunity from Stranjac's state law tort claims pursuant to La. R.S. 9:2798.1; and (5) barring discretionary immunity, Stranjac's state law tort claims must be dismissed for lack of sufficient evidence.[37]

### STANDARD OF LAW

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

---

[36] R. Doc. No. 45-1.

[37] R. Doc. No. 44-1.

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotation and citation omitted) (alteration in original).

In a nonjury case, the Fifth Circuit has suggested, but not explicitly adopted, a "more lenient standard for summary judgment." *U.S. Fid. & Guar. Co. v. Plantars Bank & Trust Co.*, 77 F.3d 863, 865 (5th Cir. 1996). The Fifth Circuit has stated that "where the judge is the trier of fact . . . he may be in a position to draw inferences without resort to the expense of trial, unless there is an issue of witness credibility." *Phillips Oil Co. v. OKC Corp.*, 812 F.2d 265, 273 n. 15 (5th Cir. 1987) (quoting *Ala. Farm Bureau Mut. Cas. Co. v. Am. Fid. Life Ins. Co.*, 606 F.2d 602, 609-10 (5th Cir. 1979)).

## *DISCUSSION*

### I. Motion for Summary Judgment

#### A. Qualified Immunity

Officer Jenkins filed this motion for summary judgment asserting the defense of qualified immunity with respect to Stranjac's § 1983 claims. In *Harlow v. Fitzgerald*, the United States Supreme Court established the principle that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc)).

A claim of qualified immunity requires the Court to engage in the well-established two-step analysis developed by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). As stated by the Fifth Circuit:

> First, we determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (en banc); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If not, our analysis ends. If so, we next consider whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *See, e.g.*, *Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable

10

competence could disagree as to whether the plaintiff's rights were
violated, the officer's qualified immunity remains intact.").

*Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007).

## B. False Arrest

Officer Jenkins contends that he is entitled to summary judgment with respect to
Stranjac's claim that he was falsely arrested for resisting arrest and DWI. Stranjac's false arrest
claims stem from his allegation that Officer Jenkins attempted to cover up an improper use of
force by arresting him for resisting an officer and DWI. Defendants contend that the false arrest
claims must be dismissed on the ground that Officer Jenkins had probable cause to arrest
Stranjac based on at least one of the six violations for which he was arrested. Defendants
contend that the charges are supported by credible testimony regarding Officer Jenkins'
knowledge and observations at the time of the arrest.

The Fourth Amendment protects individuals from unreasonable searches and seizures of
their "persons, houses, papers, and effects." U.S. Const. amend. IV. Individuals have "a clearly
established constitutional right to be free from arrest absent an arrest warrant or probable cause."
*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citing *Flores v. City of Palacios*, 381 F.3d
391, 402 (5th Cir. 2004); *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)). "A
warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of
the facts and circumstances within a police officer's knowledge at the moment of arrest are
sufficient for a reasonable person to conclude that the suspect had committed or was committing
an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000).

"An officer may conduct a warrantless arrest based on probable cause that an individual
has committed even a minor offense, including misdemeanors." *Deville v. Marcantel*, 567 F.3d

156, 165 (5th Cir. 2009); (citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557, 149 L. Ed. 2d 549 (2001)). "If there was probable cause for any of the charges made . . . then the *arrest* was supported by probable cause, and the claim for false arrest fails." *Deville*, 67 F.3d at 165 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)) (emphasis in original). The Court must apply "an objective standard, which means that we will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–54, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).

"Even if an officer erred in concluding that probable cause existed for an arrest, he is entitled to qualified immunity if his decision was reasonable, albeit mistaken." *Besson v. Webre*, 738 F. Supp. 2d 657, 661 (E.D. La. 2010) (Vance, J.) (citing *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993)). Officer Jenkins is entitled to qualified immunity as long as "a reasonable officer could have believed" that the arrest was lawfully based on probable cause, even if he violated Stranjac's Fourth Amendment rights. *See Besson*, 738 F. Supp. 2d at 661 (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)). As a result, to overcome Officer Jenkins' claim of qualified immunity, Stranjac must show that Officer Jenkins "lacked arguable (that is, reasonable but mistaken) probable cause for the arrest[]." *See Club Retro*, 568 F.3d at 207.

Officer Jenkins contends that he had probable cause to arrest Stranjac for at least one of the six offenses for which he was ultimately arrested and charged: reckless operation of a

vehicle,[38] speeding,[39] driving on a roadway laned for traffic,[40] resisting an officer,[41] flight from an officer,[42] and DWI.[43]   In his affidavit, Officer Jenkins recalls the events leading up to the arrest as follows:

> In the early hours of December 21, 2009, he heard a 911 dispatcher issue a call for all law enforcement personnel in the area of Satsuma to be on the lookout for plaintiff's vehicle based on a witness' statement that said vehicle was driving erratically, dangerously and at excessive speeds.   [He] subsequently heard over his radio that PFC Steve Bernard had commenced pursuing plaintiff's vehicle and was attempting to initiate a traffic stop on I-12.  [He] further heard over his radio that the vehicle was refusing to stop, and that the vehicle had increased its speed in response to PFC Bernard's pursuit.   [He] positioned his K-9 unit at the interstate exit for Walker, Louisiana, to intercept the pursuit.

---

[38] *See* La. Rev. Stat. Ann. § 14:99 ("Reckless operation of a vehicle is the operation of any motor vehicle, aircraft, vessel, or other means of conveyance in a criminally negligent or reckless manner.").

[39] *See* La. Rev. Stat. Ann. § 32:69(A) ("No person shall drive a vehicle on the highway within this state at a speed greater than is reasonable and prudent under the conditions and potential hazards then existing, having due regard for the traffic on, and the surface and width of, the highway, and the condition of the weather, and in no event at a speed in excess of the maximum speeds established by this Chapter or regulation of the department made pursuant thereto.").

[40]  *See* La. Rev. Stat. Ann. § 32:679(1) ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.").

[41]  *See* La. Rev. Stat. Ann. § 14:108 ("Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity . . . .  The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following: (a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest . . . .").

[42] *See* La. Rev. Stat. Ann. § 14:108.1(A) ("No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to bring a vehicle or watercraft to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft . . .").

[43] *See* La. Rev. Stat. Ann. § 14:98(A)(1) ("The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when: (a) The operator is under the influence of alcoholic beverages; or (b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood . . . .").

When plaintiff's vehicle exited the interstate at Walker, [he] was able to fully observe plaintiff's vehicle, as well as PFC Bernard's unit. As plaintiff was proceeding down the exit ramp, he began to hit his brakes in a fashion that indicated to [him] that plaintiff was attempting to create a collision with PFC Bernard's vehicle. In accordance with Walker Police Department protocol, [he] assumed lead pursuit . . . . Once plaintiff was surrounded by police units, he pulled into the parking lot of the Waffle House, and [he] commenced to conduct the felony traffic stop, believing that plaintiff had committed the criminal offense of Aggravated Flight from an Officer.[44]

It is undisputed that the Livingston Parish police department received a 9-1-1 call from a concerned motorist reporting a blue ford truck being driven at excessive speeds and endangering other drivers.[45] The 9-1-1 transcript shows that the dispatcher informed all units to be on the lookout for a "reckless op" in the description of Stranjac's truck travelling at a "[v]ery high rate of speed, almost hit another car from behind, also running people off the road." The video camera on Officer Bernard's unit shows that he approached a vehicle matching the description of the truck (which was discovered directly ahead of a white sedan matching the description the motorist reporting the call), and he signaled for the truck to pull over. The video shows that Stranjac did not immediately comply.

The 911 transcript shows that Officer Jenkins then advised Officer Bernard that he would be "waiting on the overpass. In case he don't get off at the pass." Officer Bernard replied, "Standby, Livingston. I have him, but he may not stop." Approximately 45 seconds later, Officer Bernard can be heard reporting, "Coming up on Walker. Speed sixty. Swerving." The dispatcher informed officers to watch "for a car not stopping on I-12 for Walker 38." When

---

[44] R. Doc. No. 44-4.

[45] The motorist, who was identified as an operator for the Baton Rouge police department, reported that the plaintiff was travelling at a speed in excess of 100 miles per hour, driving as if drunk, and driving in a reckless manner. The motorist was afraid that plaintiff was going to "hit someone."

Stranjac exited the interstate at Walker, Officer Bernard once again reported that he was "still not stopping." After exiting the highway, the video on Officer Bernard's unit shows that Officer Jenkins joined the pursuit, took the lead, and followed Stranjac into the Waffle House parking lot where the pursuit ended.

It is clear from the undisputed evidence that Officer Jenkins received credible information through the radio that Officer Bernard positively identified the vehicle reported by the 9-1-1 caller. It is also clear that Officer Bernard advised Officer Jenkins that the vehicle was swerving and not stopping upon request. Although Stranjac may have ultimately been acquitted of the underlying traffic violations in his criminal proceedings, the Fifth Circuit has recognized that "[W]here a police officer makes an arrest on the basis of oral statements by fellow officers, an officer will be entitled to qualified immunity from liability in a civil rights suit for unlawful arrest provided it was objectively reasonable for him to believe, on the basis of the statements, that probable cause for the arrest existed." *Deville*, 567 F.3d at 166.

Officer Jenkins was, therefore, entitled to rely on information conveyed by the dispatcher and the personal observations of Officer Bernard when determining whether Stranjac had committed or was committing the offenses for which he was arrested. The information Officer Jenkins received included credible information provided by an identified motorist that was corroborated by a fellow officer. *See, e.g.*, *Jacobson v. City of N. Richland Hills*, No. 04-421, 2006 WL 1317014, at *4 (N.D. Tex. May 15, 2006) (Means, J.) (holding that an officer had probable cause to arrest a suspect for DWI based on information provided by a 9-1-1 caller which was confirmed through his own observations); *United States v. Valdes*, 403 Fed. App'x 885, 890, 2010 WL 5029811, at *4 (5th Cir. 2010) (holding that officers had probable cause to arrest a robbery suspect found in a truck matching a 9-1-1 dispatcher's description and the driver

15

attempted to flee in an admittedly reckless manner). Stranjac has not demonstrated that Officer

Jenkins lacked probable cause to believe that Stranjac had committed or was committing at least

one of the traffic offenses for which he was arrested. *See Deville*, 567 F.3d at 165-66 (holding

that an arrest was not objectively unreasonable when the officer could have reasonably believed

that the plaintiff had committed a crime based on information provided by a seemingly reliable

witnessing officer). Accordingly, the Court finds that Officer Jenkins is entitled to qualified

immunity and summary judgment with respect to the false arrest claims asserted under federal

law.

### C. Excessive Force

Officer Jenkins also contends that he is entitled to summary judgment with respect to

Stranjac's excessive force claim. Stranjac's excessive force claim centers on his allegation that

Officer Jenkins allowed Levi to savagely attack him while he stood beside his truck with his

hands in the air. Officer Jenkins contends that Stranjac cannot overcome his qualified immunity

with respect to these claims. Officer Jenkins contends that his decision to use Levi to take down

a noncompliant suspect who would not get on the ground was not objectively unreasonable in

light of the undisputed facts and clearly established law.

The Court must "make two 'overlapping objective reasonableness inquiries'" when

conducting the qualified immunity analysis in excessive force cases. *Sanchez v. Fraley*, No. 09-

50821, 2010 WL 1752123, at *2, (5th Cir. Apr. 30, 2010) (unpublished) (quoting *Lytle*, 560 F.3d

at 410). As stated by the Fifth Circuit,

> Allegations that an officer used excessive force in conducting a
> seizure complicates the *Saucier* inquiry. This complexity stems
> from having to make two "overlapping objective reasonableness
> inquir[ies]." *Id.* at 210, 121 S. Ct. 2151 (Ginsburg, J., concurring in
> the judgment). We must first answer the constitutional violation

question by determining whether the officer's conduct met the Fourth Amendment's reasonableness requirement, as discussed below. If we find that the officer's conduct was not reasonable under the Fourth Amendment, we must then answer the qualified immunity question by determining whether the law was sufficiently clear that a reasonable officer would have known that his conduct violated the constitution. In other words, at this second step, we must ask the somewhat convoluted question of whether the law lacked such clarity that it would be reasonable for an officer to erroneously believe that his conduct was reasonable. Despite any seeming similarity between these two questions, they are distinct inquiries under *Saucier,* and we must conduct them both.

*Lytle*, 560 F.3d at 410.

To overcome Officer Jenkins' claim of qualified immunity on his claim of excessive force, Stranjac must show "(1) an injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Poole v. City of Shreveport*, --- F.3d ---, 2012 WL 3517357, at *4 (5th Cir. 2012) (quoting *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009)). "Assessing the reasonableness of a police officer's use of force involves 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Lytle*, 560 F.3d at 411 (quoting *Graham v. Connor,* 490 U.S. 386, 396, 109 S. Ct. 1865, 1871, 104 L. Ed. 2d 443 (1989)) (internal quotation omitted). Some of the factors the Court considers are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). "[T]he Court must balance the amount of force used against the need for that force." *Ballard v. Hedwig Village Police Dept.*, No. 08-567, 2009 WL 2900737, at *6 (S.D. Tex. Sept. 2, 2009) (Harmon, J.) (citing *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir.1996)).

The Supreme Court has made clear that an officer's actions are judged under an objective standard that does not take into account an officer's subjective intent. *Graham,* 490 U.S. at 397. Government officers are also entitled to deference:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation.

*Id.* at 397. However, the Court must make this determination when viewing the summary judgment evidence in a light most favorable to the plaintiff. *See Freeman*, 483 F.3d at 410-11.

The summary judgment evidence submitted in connection with this motion does not establish an absence of genuine issues of material fact with respect to the reasonableness of Officer Jenkins' conduct. Stranjac attests that he complied with all commands to exit his vehicle and put his hands in the air.[46] He attests that he stood beside his truck with his hands raised while three police officers pointed guns at him.[47] He further states that he made no attempt to reach into his vehicle or to flee.[48] He also testified that he did not hear any orders to get on the ground or any warnings that a police dog would be released in what he describes as just a "matter of second[s]" after he stepped out of the vehicle and before he was taken down by Levi.[49]

Officer Jenkins, on the other hand, contends that Stranjac was given five warnings to get on the ground and was making moves toward the open door of his vehicle before Levi was

---

[46] R. Doc. No. 49-5, ¶ 4.

[47] *Id.* at ¶ 6.

[48] R. Doc. No. 49-5, ¶¶ 6-9.

[49] R. Doc. No. 44-8, p. 45.

released. The parties also disagree with respect to whether the situation warranted the use of felony arrest procedures.[50]

When viewing the evidence in the light most favorable to plaintiff, it was objectively unreasonable for Officer Jenkins to release Levi without sufficient warning when Stranjac was standing beside his truck with his arms raised, surrounded by officers with guns drawn, and making no attempt to flee or to actively resist arrest. *See Calton v. City of Garland*, No. 02-2215, 2004 WL 2965005, at *3 (N.D. Tex. Dec. 10, 2004) (Godbey, J.) (concluding under analogous circumstances that an "officer's release of a police dog on a suspect of a misdemeanor traffic offense who is making no threatening actions and is not actively resisting at the time of the release was objectively unreasonable."); *see also McGovern v. Village of Oak Lawn*, No. 01-3772, 2003 WL 139506, at *7 (N.D. Ill. Jan 17, 2003); *Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 675 (S.D. Ohio 2011). Moreover, Stranjac's version of the facts is neither "absurd" nor "plainly contradicted by the videotape" such that it must be disregarded for purposes of summary judgment. *See Poole*, 2012 WL 3517357, at *7-*8 (citing *Scott v. Harris*, 550 U.S. 372, 381, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007)).

---

[50] First, the arrest and detail booking page shows that Stranjac was charged with "flight from an officer, agg flight from." R. Doc. No. 44-7. Although the level column shows the charge listed as a misdemeanor, aggravated flight from an officer is a felony. It is, therefore, ambiguous whether Stranjac was charged with misdemeanor flight from an officer or felony aggravated flight from an officer.

Second, defendants contend that Officer Jenkins reasonably believed that Stranjac had committed the felony of aggravated flight from an officer when he proceeded to conduct the felony arrest. *See* R. Doc. No. 47. "Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered . . . ." Human life is endangered in circumstances where "the operator of the fleeing vehicle . . . commits at least two of the following acts: (1) Leaves the roadway or forces another vehicle to leave the roadway. (2) Collides with another vehicle or watercraft. (3) Exceeds the posted speed limit by at least twenty-five miles per hour. (4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99. (5) Fails to obey a stop sign or a yield sign. (6) Fails to obey a traffic control signal device. Stranjac denies fleeing from an officer, speeding, leaving the roadway, forcing other vehicles to leave the roadway, or driving recklessly and genuine issues of material fact exist with respect to whether Officer Jenkins believed that Stanjac committed aggravated flight from an officer.

The Court must next consider whether a reasonable officer would have known that the alleged conduct was unlawful in light of clearly established law. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. "[T]he central concept is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Lytle*, 560 F.3d at 417 (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (internal quotations omitted)). "Thus, while the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Lytle*, 560 F.3d at 417 (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)).

Stranjac has come forward with competent summary judgment evidence in support of his allegation that he complied with Officer Jenkins' instructions to step out of his vehicle and to put his hands in the air. Stranjac's deposition testimony and affidavit support his assertion that he made no threatening moves and that he did not hear a verbal warning before Officer Jenkins released a police dog to seize him.[51] Even in the absence of Fifth Circuit caselaw specifically addressing excessive force allegations in a dog bite case,[52] no reasonable police officer could

---

[51] Defendants contend that plaintiff's testimony that he did not hear a warning is insufficient to defeat summary judgment. As the U.S. Court of Appeals for the Fourth Circuit has explained, however, defendants' position is "incompatible with the summary judgment principle that we must view the facts in the light most favorable to the nonmoving party . . . . If a warning is not given, then a witness will not hear one. A juror could reasonably conclude that if certain witnesses did not hear a warning, then *no* warning was given, even if other witnesses testify to a warning." *See Vathekan v. Prince George's Cnty*, 154 F.3d 173, 180 (4th Cir. 1998).

[52] As other courts have noted, "there is not an abundance of case law addressing the use of police dogs to effectuate seizures." *Campbell v. City of Springboro, Ohio*, 788 F. Supp. 2d 637, 675 (S.D. Ohio 2011). That does not mean,

conclude that the use of a police dog is permissible when employed, without warning, against a secured non-threatening suspect. *See Calton*, 2004 WL 2965005, at *4 (holding that no reasonable officer could conclude that releasing a police dog without warning on a compliant suspect would be constitutionally permissible). Accordingly, genuine issues of material fact exist with respect to whether Officer Jenkins' conduct violated clearly established law and he is not entitled to summary judgment with respect to Stranjac's excessive force claims.

### D. State Law Claims

Defendants also filed their motion for summary judgment asserting the defense of discretionary immunity against Stranjac's state law claims. Louisiana Revised Statute Annotated § 9:2798.1 provides in part, "Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." La. Rev. Stat. Ann. § 9:2798.1(B).[53] However, the discretionary immunity

---

however, that there is no clearly established law that would indicate to Officer Jenkins that the deployment of a police dog under the circumstances and in the manner as occurred in this case was unreasonable. *See id.*; *Mendoza v. Block*, 27 F.3d 1357, 1360-62 (9th Cir. 1994). "[T]here is a continuum of permissible versus impermissible use when it comes to police dogs." *Campbell*, 788 F. Supp. 2d at 675.

> On the permissible end of that spectrum are cases wherein officers deploy properly trained police dogs to locate individuals who were believed to be involved in nefarious criminal activity, who may have been armed and dangerous, and who failed to surrender or respond in any manner after officers gave several warnings. *See Robinette v. Barnes*, 854 F.2d 909, 909 (6th Cir. 1988); *Matthews v. Jones*, 35 F.3d 1046, 1052 (6th Cir. 1994). On the other end of that spectrum lies a case in which a canine officer allowed a little-trained police dog to get close enough to a subject of a track to bite the subject despite the fact that the subject had already been subdued and placed in handcuffs. *See White v. Harmon*, No. 94-1456, 1995 WL 518865, at *1, *3 (6th Cir. Aug. 31, 1995).

*Id.*

[53] The parties agreed at the pretrial conference that defendants are either "public entities or their officers or employees" as defined by the statute. However, the Court does not decide that issue because, as explained below, defendants have not shown that they are otherwise entitled to discretionary immunity.

provided in § 9:2798.1 does not apply "[t]o acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." La. Rev. Stat. Ann. § 9:2798.1(C)(2). Defendants are not entitled to immunity against Stranjac's state law claims as there are genuine issues of material fact with respect to whether the officers acted in a reckless manner when viewed in a light most favorable to plaintiff. *See Besson v. Webre*, 738 F. Supp. 2d 657, 668 (E.D. La. 2010) (Vance, J.).

To prevail on his claim under Louisiana Civil Code Article 2315, Stranjac must prove that defendants breached their duty of "reasonableness under the totality of the circumstances."[54] *Hudspeth v. City of Shreveport*, 270 Fed. App'x 332, 338, 2008 WL 749547, at *6 (5th Cir. Mar. 19, 2008) (quoting *Stroik v. Ponseti*, 699 So. 2d 1072, 1077 (La. 1997). The Fifth Circuit has recognized that "[u]nder Louisiana law, we apply the same 'reasonableness' standard to . . . state law claims of false arrest and excessive force that we apply when analyzing whether qualified immunity shields [an officer against] federal constitutional claims." *Winston v. City of Shreveport*, 390 Fed. App'x 379, 385-86, 2010 WL 3190709, at *6 (5th Cir. Aug. 12, 2010) (citing *Reneau v. City of New Orleans,* No. 03-1410, 2004 WL 1497711, at *3-*4 (E.D. La. July 2, 2004) (Fallon, J.); *Kyle v. City of New Orleans*, 353 So. 2d 969, 973 (La. 1977)). As explained above, genuine issues of material fact exist with respect to whether Officer Jenkins breached his duty to Stranjac by using an excessive degree of force to effect his arrest. Accordingly, defendants are not entitled to summary judgment with respect to Stranjac's state law claims.

## II. Motion to Exclude Expert Testimony

---

[54] Counsel for plaintiff advised the Court during the pretrial conference that the state law claims sound only in negligence and do not involve allegations of intentional torts. *See* R. Doc. No. 55.

**A. Standard of Law**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony. Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113 S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation;

and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (citing *Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

When expert testimony is challenged under *Daubert*, the burden of proof rests with the party seeking to present the testimony. *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269 (5th Cir. 1998). To meet this burden, a party cannot simply rely on its expert's assurances that he has utilized generally accepted scientific methodology. Rather, some objective, independent validation of the expert's methodology is required. *Id.* Nonetheless, as Judge Vance stated in

*Scordill v. Louisville Ladder Group, L.L.C.*, 2003 WL 22427981 at *3 (E.D. La. October 24, 2003):

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert*, 509 U.S. at 596. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'" *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## B. Analysis

Stranjac seeks to introduce the expert opinion of retired U.S. Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent and Criminal Justice Associate Professor, W. Lloyd Grafton ("Grafton"), in support of his excessive force claims. Grafton reviewed what he understood as the undisputed facts of the arrest, and he analyzed Officer Jenkins' conduct in light of the tenets of Pressure Point Control Tactics ("PPCT") and the town of Walker police policy manual regarding the use of K-9 units. Defendants seek to exclude Grafton's testimony on three grounds. Defendants contend that (1) Grafton is not qualified to testify as an expert in the use of canines as law enforcement tools; (2) his opinion is not based on recognized principles of professional conduct; and (3) his opinion is based on erroneous factual assumptions and legal conclusions.

With respect to Grafton's qualifications, defendants argue that Grafton is not qualified to testify as an expert on the use of canines as law enforcement tools. Defendants contend that Grafton has never had training in the use of canines in law enforcement, and is not a member of the U.S. Police Canine Association. In addition, defendants argues that Grafton is not qualified to evaluate law enforcement procedure during traffic stops because he has never attended a police academy in Louisiana, never attended P.O.S.T. (Police Officer Standard of Training) training in Louisiana, never attended training for the Louisiana Law Enforcement Handbook, and has never conducted routine traffic stops.

Stranjac acknowledges that Grafton is not an expert specifically in the use of canines. However, he contends that Grafton is well qualified to render an expert opinion on the use of force continuum and PPCT through his years of education and experience. Grafton's resume shows that that he has been a professor of criminal justice since 2004 with duties consisting of teaching various law enforcement courses including those on policing, use of force, search and seizure, and ethics.[55] He has also been a police consultant and expert witness since 1998, advising law enforcement departments and trial lawyers on matters concerning use of force, police pursuits, firearms, and other issues.[56] Grafton has approximately twenty (20) years of experience working as a special agent for the ATF enforcing federal laws, training police officers, instructing at the federal law enforcement training center, participating in drug raids, and performing other law enforcement duties.[57] The Court agrees with Stranjac that Grafton is qualified based on his knowledge, experience, and training to render an expert opinion with

[55] R. Doc. No. 46-1.

[56] *Id.*

[57] *Id.*

respect to Officer Jenkins' use of force in this case.  *Cf. Brown v. Strain*, No. 09-2813, 2010 WL 3523026, at *1 (E.D. La. Aug. 31, 2010) (Berrigan, J.).

With respect to the relevance and reliability of Grafton's report, defendants contend that the report relies on a statement of facts that lacks evidentiary support and is "clearly wrong." Defendants contend that Grafton testified in his deposition that the timeline of the events in his report is merely an estimate.  Defendants also contend that Grafton failed to characterize the arrest as one for felony aggravated flight from an officer, and that he did not consider the totality of the circumstances as set forth in the arrest report or as explained by the arresting officers. Finally, defendants contend that Grafton's report includes inadmissible legal conclusions, namely his statement that, "I am of the opinion that Officer Rusty Jenkins used excessive force in arresting Mr. Dino Stranjac. . . . It was not necessary or [sic] was it objectively reasonable under the circumstances."

As Stranjac suggests, defendants' arguments are concerned primarily with the weight Grafton's testimony should be assigned rather than its admissibility.  Moreover, this case will be presented as a non-jury trial and the gatekeeping purpose of *Daubert* is not implicated.  *N.W.B. Imports and Exports Inc. v. Eiras*, 2005 WL 5960920, at *1 (M.D. Fla. Mar. 22, 2005) (citing *Albarado v. Chouest Offshore, LLC*, No. 02-3504, 2003 WL 22204538, at *1 (E.D. La. Sept.5, 2003) (Barbier, J.)). This Court will, therefore, receive Grafton's testimony at trial, make a final admissibility decision and, if admissible, accord it the weight, if any, it deserves.  *See id.* The Court notes, however, that Grafton will not be permitted to testify to conclusions of law as that will not assist the trier of fact.  *See Toomer v. Florida Parishes Juvenile Justice Comm'n*, No. 03-0734, 2005 WL 5974570, at *1 (E.D. La. Mar. 3, 2005) (Lemelle, J.); *Brown v. Strain*, No. 09-2813, 2010 WL 3523026, at *1 (E.D. La. Aug. 31, 2010) (Berrigan, J.).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that motion for summary judgment is **GRANTED** with respect to plaintiff's false arrest claims asserted under federal law. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the motion to exclude Grafton's expert testimony is **GRANTED** to the extent that Grafton seeks to testify with respect to legal conclusions. The motion is **DENIED** in all other respects.

New Orleans, Louisiana, September 5, 2012.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**